**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WAYNE LOBBAN,**

      **Petitioner,**

**vs.**                                                 **Case No. 4:03cv325-WS/WCS**

**JEB BUSH, as Governor of Florida
and Chairman of the FLORIDA
BOARD OF EXECUTIVE CLEMENCY,
the FLORIDA PAROLE COMMISSION,
and the FLORIDA DEPARTMENT
OF CORRECTIONS,**

      **Respondents.**

_____/

**<u>REPORT AND RECOMMENDATION ON § 2254 PETITION</u>**

This cause is before the court for ruling on a 28 U.S.C. § 2254 petition.  As set forth in more detail ahead, after serving part of his Florida sentence, Petitioner was granted a conditional commutation of sentence and deported to Jamaica in 1994.  He later reentered the United States in violation of the conditional commutation of sentence, and is now serving the remainder of his Florida sentence.  Petitioner argues that due process was violated by enforcement of conditions to which he never agreed, and by revocation of the conditional commutation without a hearing.

**Procedural History and Arguments**

Petitioner named the Florida Parole Commission as Respondent in his § 2254 petition.  Doc. 4.  The petition was served on Respondent Commission and the Florida Attorney General.  Doc. 6.

Respondent Florida Parole Commission filed an answer, asserting that Petitioner's claim was procedurally barred as it was not properly raised in state court. Doc. 10.  The court found Respondent's exhaustion argument not persuasive, and directed the filing of a supplemental answer.  Doc. 12 (incorporated herein by reference).  As a result of service issues, additional time was allowed.  Doc. 15.

Respondent Commission filed a "Supplement to Answer to Petition for Writ of Habeas Corpus and Motion to Dismiss as to Respondent Florida Parole Commission." Doc. 16.  It was argued there for the first time (both here and in state court) that the Commission is not a proper party, and that "[t]he Florida Parole Commission does not now have, nor has ever had, authority or jurisdiction over the Petitioner."  *Id.*, pp. 2-3.

The Court addressed this argument in the order of October 1, 2004.  Doc. 21. Some of the order is repeated here, and the entire order is incorporated by reference. The court deferred ruling on the motion to dismiss and added the Secretary of the Florida Department of Corrections, the Office of the Florida Governor, and the Florida Board of Executive Clemency as Respondents.  *Id.*, p. 5.  The court noted that the issues seemed fairly straightforward and Respondents (more so than Petitioner) would likely have access to the records.  *Id.*  The records would presumably show whether Petitioner did or did not acknowledge or agree to conditional commutation, and whether he was provided any opportunity to be heard prior to revocation.  *Id.*  It was ordered that

"Respondent should provide relevant portions of the record and make appropriate argument as to whether Petitioner is entitled to relief on the facts and law." *Id.*

Respondent Department of Corrections filed a limited answer with supporting appendix (hereafter App.),[1] and Respondent Bush filed a response to the order.  Docs. 25 and 26.   Petitioner filed a reply.  Doc. 27.  The matter is ready for ruling.

The facts were previously summarized by the court, and are summarized by Respondent Department of Corrections and Respondent Bush.  Doc. 21, pp. 3-5; doc. 25, pp. 1-4; doc. 26, pp. 1-4.  As set forth in Executive order 94C-106:

> **WHEREAS, WAYNE DONOVAN LOBBAN**, who was convicted in the Circuit Court, Dade County, Florida, February 28, 1989, of the offense of Trafficking in Cocaine, and sentenced therefor to serve 15 years mandatory minimum in a State prison, should now, upon showing made, be granted a conditional commutation of sentence.
>
> Action by this Board[2] is being taken pursuant to the terms and conditions as expressed within the Florida Board of Executive Clemency/United States Immigration and Naturalization Service (INS) *MEMORANDUM OF UNDERSTANDING (MOU)* relating to expedited removal of criminal aliens . . . . Specifically, this Board incorporates by reference paragraph 2 of the *MOU* (attached hereto as "Exhibit A") as a basis for such conditional commutation. . . .
>
> **WAYNE DONOVAN LOBBAN** shall not return to or attempt to re-enter the State of Florida until such time as he receives express written approval, upon written application, from the Board; however, such period shall be no less than the applicable period specified by Title 8 of the United States Code, as amended. . . .

---

[1] Many of the documents submitted in the Appendix were also submitted as exhibits to Doc. 10.  Where there are duplicate copies, references are made to the Appendix only.

[2] This is the Florida Board of Executive Clemency.

> If **WAYNE DONOVAN LOBBAN** *fails to comply with conditions of this*
> *order, this conditional commutation of sentence may be revoked by the*
> *Board without further hearing.*

App. pp. 15-16 (emphasis added).  Pursuant to Art. IV, Section 8 of the Florida

Constitution, conditional commutation was granted by the Florida Governor with

approval of at least three members of the Florida Cabinet.  *Id.*, pp. 16-17.

Paragraph 2 of the MOU provided in relevant part that the alien would be

informed that the commutation would suspend, not rescind, the remaining sentence,

which would "remain in abeyance for the Board[3] to re-impose at its discretion should

the alien breach any of the express conditions of the Board's executive order."  App. p.

20 (¶ 2(a)).  It provided that after removal, "the alien must remain outside of the United

States, and must agree to refrain from making any attempt to re-enter the United

States," except as allowed by specific waiver of the United States Attorney General, in

the period allowed by Title 8 of the United States Code.  *Id.*, p. 21 (¶ 2(i)).

Notwithstanding, the alien also could not attempt to reenter the State of Florida for a

period to be determined by the Board, not less than the period allowed by Title 8.  *Id.* (¶

2(j)).

> Failure to comply with this or any other express provision of the Board's
> executive order will constitute a material breach of the conditions of
> clemency, and will subject an offending alien to revocation of clemency
> and re-imposition of the original criminal sentence(s) and any related
> periods of incarceration within DOC (in addition to any other remedy
> available to the state or federal government).

*Id.*  (¶ 2(k)).

---

[3] This again is the Florida Board of Executive Clemency.

The MOU also provided "[t]hat INS will pursue federal prosecution to the fullest extent allowed by law, and Florida will pursue extradition, for re-entry after deportation, for any alien who re-enters or attempts to re-enter the United States, after having been removed from the United States pursuant to this initiative."  *Id.*, p. 22.

Petitioner has asserted throughout his state proceedings and here that he refused to sign the form acknowledging and accepting the conditional commutation. Proof of this is finally in the record.  Respondent Department of Corrections has submitted the "acknowledgment of agreement," reflecting that on June 20, 1994, in the presence of two officers, Petitioner refused to sign the form.  App. p. 28.  He was ultimately deported to Jamaica, then later arrested in New York on March 6, 2001.  App. pp. 1-2.

Executive order 2002C-50 set forth the prior order and conditional commutation of sentence.  App. p. 32.

> **WHEREAS,** the Governor has been officially notified by INS that **WAYNE DONOVAN LOBBAN** violated the conditions of the conditional commutation by returning to the United States, therefore, the conditional commutation of sentence should be revoked, with the understanding that he shall be transferred to the Department of Corrections, and shall be incarcerated for the remainder of his original 15 year sentence.

*Id.*, p. 33.  Again pursuant to Art. IV, Section 8 of the Florida Constitution, conditional commutation was revoked by the Florida Governor with the approval of at least three members of the Florida Cabinet.  *Id.*, pp. 33-34.

Petitioner filed inmate grievances and appeals complaining that he refused clemency, that he never had a hearing, and seeking copies of his clemency papers.

App. pp. 36-39.  He was denied relief because this was a matter not in the control of the Department of Corrections, and he was told to present his claim to the courts.  *Id.*

Petitioner filed a petition for writ of habeas corpus in state court.  App. pp. 40-45. He alleged that he was offered clemency in 1994 with less than one year remaining on his sentence, and he refused.  *Id.*, p. 41.  Petitioner asserted he was extradited to Florida for allegedly violating the conditions which he never accepted, so argues that those conditions were not binding.  *Id.*  He asserted that he had not been granted a final revocation hearing in violation of due process.  *Id.*, p. 43.  Petitioner asked for an evidentiary hearing and release "because his rearrest is obtained in violation of state and federal constitutions."  *Id.*, p. 44.

The state court entered an order on September 18, 2002, finding:

> Petitioner has failed to demonstrate an entitlement to relief.  Petitioner provides no attachments/support to demonstrate his contention that he did not agree to accept Control/Conditional Release.  Petitioner has failed to demonstrate that Respondent has abused its discretion or prejudiced Petitioner through its actions.

> For the foregoing non-exclusive reasons, the Petition is **DENIED**.

*Id.*, p. 46.

Petitioner filed a motion for rehearing and supporting affidavit.  Doc. 11, Ex. A. He argued there that the court should brush aside technicalities to do justice.  In the attached affidavit, he stated under penalty of perjury that he was released in September 1994 after being offered clemency, which he refused.  He said that he was arrested in New York, later placed in INS custody, extradited to Florida in May of 2002, and that his custody by the Department of Corrections was unlawful.  The motion for rehearing was denied.  Doc. 11, Ex. B.

Petitioner filed a petition for writ of certiorari in the First District Court of Appeal. App. pp. 47-51.  He again argued that he was never given a revocation hearing in violation of due process, and had not had the opportunity to prove he did not accept or sign any agreement to conditions of commutation.  *Id.*, pp. 48-49.  He argued that the conditions were not binding because he did not accept them, and that the lower court departed from essential requirements of law in denying habeas corpus relief based on technicalities.  *Id.*, pp. 49-50.

The Florida Parole Commission responded to the petition for writ of certiorari, arguing that dismissal of the habeas corpus petition was proper.  App. pp. 54-61.  The Commission argued that Petitioner did not demonstrate either a deprivation of due process or that the court departed from the essential requirements of the law.  *Id.*, pp. 55-57.  The Commission asserted:

> The basis of the Petitioner's argument is that he did not accept 'clemency' and therefore the conditions were not binding on him.  The Petitioner included no documents, evidence, data or substantiation for his bald allegations that he was either entitled to an evidentiary hearing or that he is entitled to immediate release.  In the instant case the Petitioner did not establish a prima facie case that he was entitled to immediate release based on the limited facts he revealed to the lower court which were not supported by any evidence whatsoever.

*Id.*, p. 58.

The Commission further argued there that Petitioner had not carried his burden of proof.  *Id.*, pp. 59-60.  It argued that even if there was "error in denoting the Petitioner's failure to support his contention that he did not 'accept Control/Conditional Release,' the result reached by the lower court was correct and should be affirmed." *Id.*, p. 61, *citing* Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 63

S.Ct. 454, 87 L.Ed.2d 626 (1943), <u>Home Depot v. Taylor</u>, 676 So. 2d 479 (Fla. 5th DCA

1996), and <u>Dade County Schoolboard v. Radio Station WQBA</u>, 731 So. 2d 638 (Fla.

1999) (citation to record omitted).  Though no specific pages were referenced, these

opinions were presumably cited for their common proposition:  that a lower court

decision reaching the right result based on the wrong reason should still be affirmed.

318 U.S. at 88, 63 S.Ct. at 459; 676 So. 2d at 480 and 731 So. 2d at 644-645 (both

referring to this as the "tipsy coachman" rule[4]).  The Commission, however, cited no

alternative reasons to support the allegedly correct result.  *Id.*, p. 61.

Petitioner filed a reply to the Commission's response.  Doc. 11, Ex. C.  He

asserted that the state court was required to review the record considered by the

Commission, that the Commission must articulate its reasons and provide information

from the record supporting its reasons, and that the trial court erred in not requiring the

Commission to do so, and in not reviewing the record before denying relief.  *Id.*, pp. 1-3.

The petition for writ of certiorari was denied per curiam.  App. p. 63.

---

[4] "It not infrequently happens that a judgment is affirmed upon a theory of the
case which did not occur to the court that rendered it, or which did occur and was
expressly repudiated. The human mind is so constituted that in many instances it finds
the truth when wholly unable to find the way that leads to it.

[T]he pupil of impulse, it forc'd him along, His conduct still right, with his
argument wrong; Still aiming at honor, yet fearing to roam[,] The
coachman was tipsy, the chariot drove home."

<u>Lee v. Porter</u>, 1879 WL 2526, *2, 63 Ga. 345 (Ga. 1879).

Petitioner then filed his § 2254 petition, asserting that he never had a revocation hearing and that he did not accept the conditions of clemency so they were not binding on him.  Doc. 4, pp. 1, 4.

Respondents have raised a number of arguments.  Respondent Department of Corrections asserts that the state court denied relief on a state law ground independent of the federal claim and adequate to support the judgment.  Doc. 25, pp. 5-7.  As previously stated:

> It seems to this court that Petitioner fairly presented the same claim raised in his § 2254 petition to the state court, the state court denied relief on the merits, and he pursued all available avenues of review.  The state court did not summarily dismiss the petition as facially insufficient, but denied relief finding Petitioner failed to demonstrate entitlement to it. . . . *[T]he burden of proving entitlement to relief is different than the burden of stating facts sufficient to warrant review of a claim on the merits.*

Doc. 12 (incorporated herein by reference), p. 3 (emphasis added, citations omitted).

The court again has reviewed the record and reconsidered this finding, based on Respondent Department of Corrections' assertion of an independent and adequate state ground to support the state court's decision.  On reconsideration, a better analysis is that the state court summarily dismissed this claim without reviewing the merits, but this was not an independent and adequate state law ground for procedural default purposes.  Petitioner attempted to obtain documents through the inmate grievance procedure and was told to raise his claims in court.  He was not given any opportunity for discovery and the Respondent was not directed to provide any records before the state court ruled on the petition.  If the record (as finally produced here by the Department of Corrections) had been furnished to Petitioner through the grievance process, discovery, or had been required by the trial court by requiring a response on

the merits, Petitioner could have supported his claim that he refused the conditions of commutation.  As to his claim that he never had a hearing,[5] it is hard to imagine how Petitioner was supposed to prove the negative.  Even after the filing of supplements in this court, no documentation has been presented to show that Petitioner did or did not have a hearing, and it must be presumed he did not.

It is therefore concluded that the state procedural ground relied upon by the state court was not adequate for purposes of applying the law of procedural default.  *See* Judd v. Haley, 250 F.3d 1308, 1313-18 (11th Cir. 2001) (state court's determination that record was insufficient for consideration on the merits was manifestly unfair and not adequate for purposes of applying procedural default); Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 885-886, 151 L.Ed.2d 820 (2002) (there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.").

Since the state court did not reach the merits of the federal claim, this court is not limited by § 2254(d)(1) and (2) (providing that relief will not be granted on a claim adjudicated on the merits by a state court unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."); Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520,

---

[5] The state trial court did not find that Petitioner had failed to prove the fact that he had not had a hearing.  It said only that Petitioner had failed to prove that he did not agree to accept the conditions of release.

146  L.Ed.2d 389 (2000) (discussing the "contrary to" and "unreasonable application of" clauses).  This court therefore should address the claims on the merits, unconstrained by § 2254(d).

Respondents argue that Petitioner failed to state a federal claim cognizable under § 2254.  Doc. 25, pp. 7-11; doc. 26, 6-7.  Respondents also argue there has been no constitutional violation.  Doc. 25, pp. 8-11; doc. 26, pp. 7-10.[6]  Petitioner responds that the arguments are unsupported or evasive.  Doc. 27, pp. 5-12.  He claims he is not arguing that he had the right to reject commutation, but that the conditions required agreement, and his rejection is a defense to the enforcement of conditions.  *Id.*, p. 12. Petitioner asserts that the MOU itself required his agreement.  *Id.*, p. 14.  As he did in state court, Petitioner makes multiple references to Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  *Id.*, pp. 9, 15, 19 and 20.

**Legal Analysis**

### Whether Petitioner had a due process right to refuse the conditions of the commutation of his sentence

With certain exceptions, the Governor of Florida may, "grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses."  Article IV, § 8, Florida Constitution.[7]  At the time of Petitioner's commutation

---

[6] The arguments are related; if there was no constitutional right (created by state law or otherwise) then the claim must be based on state law.

[7] As noted in previous orders, while clemency is a function of the executive branch, the Florida Parole Commission acts as "staff" to the Governor in conducting investigations and preparing reports regarding clemency.  Doc. 21, p. 3, n. 1, *citing* Parole Comm'n v. Lockett, 620 So. 2d 153, 157-158 (Fla. 1993).  Further, the Office of Executive Clemency "is co-located with the Florida Parole Commission for ease of operation and coordination of functions."  *Id.* (referencing the Department of

the approval of three members of the cabinet was required; as amended in 1998 the approval of two cabinet members is required.  The Florida Constitution vests "sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace," of granting a pardon or commutation of punishment.  Sullivan v. Askew, 348 So. 2d 312, 315 (Fla.), *cert. denied*, 434 U.S. 878 (1977).  This power of the executive "is beyond the control, or even the legitimate criticism, of the judiciary."  *Id.* (citation omitted).

Petitioner's consent to the commutation, or to the conditions thereof, was not required under Florida law.

> When granted [a pardon] is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed.  Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done.  So far as a pardon legitimately cuts down a penalty it affects the judgment imposing it.  *No one doubts that a reduction of the term of an imprisonment or the amount of a fine would limit the sentence effectively on the one side and on the other would leave the reduced term or fine valid and to be enforced, and that the convict's consent is not required.*

> When we come to the commutation of death to imprisonment for life it is hard to see how consent has any more to do with it . . . .  Supposing that [the prisoner] did not accept the change, he could not have got himself hanged against the Executive order.  Supposing that he did accept, he could not affect the judgment to be carried out.  The considerations that led to the modification had nothing to do with his will.  The only question is whether the substituted punishment was authorized by law . . . .

Biddle v. Perovich, 274 U.S. 480, 486-487, 47 S.Ct. 664, 665 71 L.Ed.2d 1161 (1927) (emphasis added).

_____

Corrections' web site).

In Stone v. Burch, 114 Fla. 460, 154 So. 128 (1934), the Florida Supreme Court

made a similar distinction between a "pardon" and a "commutation of sentence:"

> There is a material difference between a commutation of sentence and a
> conditional pardon.  A commutation is the change of punishment to which
> a person has been condemned to a less severe one, or the substitution of
> a less for a greater penalty or punishment. . . .
>
>> "Pardon" exempts from punishment, bears no relation to
>> term of punishment, and *must be accepted* or it is nugatory;
>> while "commutation" merely substitutes lighter for heavier
>> punishment, removes no stain, restores no civil privilege,
>> and *may be effected without the consent and against the will
>> of the prisoner.*

114 Fla. 463-464, 154 So. 129 (citations omitted, emphasis added).

Petitioner here refused to sign the form, but a commutation of sentence cannot

be refused.  Petitioner had no right to refuse the commutation or any of its conditions

and the lack of his signature is immaterial.

Further, Petitioner made no attempt to challenge the commutation or postpone

his consequent deportation until years later, when the conditional commutation was

revoked.  While a pardon is different from a commutation of sentence, cases concerning

the scope of an acceptance of a pardon indicate that under Florida law, a prisoner will

not be allowed to enjoy the liberty afforded by executive clemency without becoming

bound by conditions established in the grant of such clemency.  *See* Alvarez v. State,

50 Fla. 24, 39 So. 481, 484 (1905) ("where a criminal accepts a pardon, he accepts it

subject to all its valid conditions and limitations, and will be held bound to a compliance

therewith"); Chastain v. Mayo, 56 So. 2d 540, 542 (Fla. 1952) ("when a conditional

pardon is accepted, the pardonee accepts it subject to all its conditions and limitations

and is bound to comply therewith").  Thus, Petitioner could not enjoy the liberty afforded

by the commutation without having, as a matter of law, accepted the conditions attached.  Such acceptance of the commutation constituted acceptance of the condition that Petitioner not return to Florida or the United States.

Petitioner did not have a liberty interest entitled to the protections of due process in being granted a commutation of sentence.  Bundy v. Dugger, 850 F.2d 1402, 1423-24 (11th Cir.1988), cert. denied, 488 U.S. 1034 (1989) (Florida clemency procedures did not create liberty interest in being accorded a clemency hearing) (citing Sullivan, other citations omitted); Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (there is no constitutional right to commutation of sentence, and no liberty interest in clemency proceedings entitled to due process protections); Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 275, 280-281, 118 S.Ct. 1244, 1249-50, 140 L.Ed.2d 387 (1998) (same).  For these reasons, Petitioner had no due process liberty interest in the grant of the commutation of his sentence or in refusing any condition attached to that commutation except, as will be explained ahead, his federal right to a pre-revocation hearing.[8]

### Whether Petitioner had a due process right to a hearing before the commutation of sentence was revoked

Florida law requires a hearing before revocation of a pardon or of a commutation of sentence where there has been a violation of a condition of such release.  This is gleaned primarily from Florida law governing conditional pardon cases.  It is recognized that there is a difference between a pardon and a commutation of sentence noted

---

[8] The condition that there would be no pre-revocation hearing attached as a matter of state law, but, for the reasons explained ahead, did not operate as a waiver of the federal right to a hearing.

above, in that the prisoner must accept the pardon and its conditions, whereas he may not refuse a commutation of sentence and conditions.  But there does not appear to be any good reason to draw a distinction between the two with respect to a right to a hearing on revocation of release for violation of conditions.

In Florida, when a conditional pardon is accepted, "[i]f the conditions and limitations set out in the conditional pardon are violated by the pardonee, then he may be rearrested and recommitted to the State Prison."  Chastain v. Mayo, 56 So. 2d at 541.[9]  In another Florida case, the Florida Supreme Court held:

> The dominant question is whether the appellant was entitled to a formal hearing before the State Board of Pardons, or before a court of competent jurisdiction, in respect to the truth or falsity of the complaint lodged against him, as a condition precedent to the revocation of his pardon.
>
> This question must be answered against the contentions of the appellant.
>
> It is settled in this jurisdiction that the pardoning authorities, in granting a pardon after conviction, may impose any condition, limitation or restriction that is not illegal, immoral, or impossible of performance.  When a convict accepts a pardon containing such conditions, he accepts it subject to the terms imposed, and will be held bound to a compliance therewith.
>
> A conditional pardon may, indeed, most often does, *contain the provision* that whenever the pardoning authority is satisfied from an investigation of the facts that the convict is violating the conditions imposed therein, the offender shall be *liable to summary arrest and recommitment* for the unexpired portion of the original sentence.  Where the convict accepts a pardon containing such stipulation he will not thereafter be heard to say that such stipulation is not binding upon him.

---

[9] That prisoner had received a conditional pardon in 1940 which was revoked in 1941, and he contended by habeas corpus petition filed in 1951 that, *inter alia*, he had not had a hearing or opportunity to be heard before the revocation.  *Id.*, at 541-542. The court held that the prisoner had waived his alleged rights to a hearing by delaying ten years to file his petition.  *Id.*, at 542.

State ex rel. Bailey v. Mayo, 65 So. 2d 721, 721 (Fla. 1953), *citing* State v. Horne, 52

Fla. 125, 42 So. 388 (1906), Alvarez v. State, *supra*, and State ex rel. Brown v. Mayo,

126 Fla. 811, 171 So. 822 (1937).

Alvarez was a case of first impression involving the effect of a conditional pardon,

violation of conditions, and the proper procedure on violation.  50 So. at 483-484.  The

court explained that where a condition subsequent is violated, the pardon becomes

void, and the person may be arrested and required to serve the rest of his sentence.

*Id.*, at 484 (citation omitted); Horne, 42 So. at 391; Stone, 154 So. at 130.  The court in

Alvarez said:

> Where a convict has been released under a conditional pardon, his
> rearrest and recommitment to his original sentence cannot be had upon
> the mere order of the Governor (or board of pardons) alone, *unless such a
> course is provided by statute or by the express terms of the pardon.*
>
> *The convict (in the absence of a statute or of express provisions in the
> pardon to the contrary) is entitled to a hearing before some court of
> general criminal jurisdiction*, in order that he may show that he has
> performed the condition of the pardon, or that he has a legal excuse for
> not having done so, or that he is not the same person who was convicted;
> and on such a hearing the court may, in its discretion, take the verdict of a
> jury as to the facts involved.  But the criminal is not entitled to a jury trial
> as a matter of right, except upon the question whether he is the same
> person who was convicted.

50 So. at 484 (emphasis added); 42 So. at 393 ("rearrest and recommitment to his

original sentence cannot be had upon the mere order of the Governor alone, unless

such a course is provided by statute, or by the express terms of the pardon," and the

prisoner was entitled to a hearing).  A hearing, where required under state law, should

be "purely informal."  50 So. at 484.

Florida law also provides that a hearing is not required if the order granting

release had specified that a hearing would not be provided:

> Sometimes conditional pardons expressly provide that, upon violation of
> the condition, the offender shall be *liable to summary arrest* and
> recommitment for the unexpired portion of his original sentence.  Such
> stipulations *upon acceptance of the pardon become binding* upon the
> convict and authorize his rearrest and recommitment and in the manner
> and by or through the official authority as stipulated in the pardon.

Horne, 42 So. at 391 (citing Alvarez, other citation omitted, emphasis added).  In Horne,

the conditional pardon provided that if the petitioner violated his conditions then the

pardon would be null and void, and it would be the duty of any sheriff "to immediately

arrest him and return him to the penitentiary to serve out the remainder of his term."  42

So. at 392-393.  The court found that the sheriff acted in his authority in arresting

petitioner based on an executive order that petitioner violated the conditions.  *Id.*, at

393.  The court also held that:

> the executive order expressly ordering the arrest was, as such, a nullity,
> because such order was not authorized by the pardon or by the statute.
> The terms and stipulations of the pardon itself, by which the defendant in
> error was completely bound, expressly authorizes such arrest and
> detention though they did not authorize the executive order.

*Id.*, *citing* Alvarez.

The record on appeal in Alvarez did not show whether or not there had been, at

the habeas corpus proceeding, an inquiry into the alleged violation of conditions, "and,

inasmuch as the plaintiff in error *has the right to have such inquiry made and

determined by the proper authority*, the judgment of the court below must be reversed

and remanded, in order that such inquiry may be properly made and passed upon."  *Id.*

(emphasis added).  *See also* Horne, 42 So. at 394 (remanding "with directions that in

the habeas corpus proceedings the court do make inquiry into the truth of the alleged

violation . . . .").

In summary, Florida law generally provides that a prisoner who receives a

conditional commutation of sentence is entitled to a hearing before the commutation of

sentence is revoked.[10]  Petitioner here, however, did not have a right to a hearing under

Florida law prior to revocation because one of the conditions of the commutation of his

sentence, which he impliedly accepted under Florida law, was that if he failed "to

comply with conditions of this order, this conditional commutation of sentence may be

revoked by the Board *without further hearing*."  App. p. 16 (emphasis added).

The issue for this court to resolve, however, is whether Petitioner had a federal

constitutional right to a hearing.  A secondary issue is whether he waived any federal

constitutional right.[11]

In the context of parole, a due process distinction has long been drawn between

the initial release decision and the revocation decision:  "There is a crucial distinction

between being deprived of a liberty one has, as in parole, and being denied a

conditional liberty that one desires."  Greenholtz v. Nebraska Penal Inmates, 442 U.S.

1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979).  *Id.*  "It is not sophistic to attach

greater importance to a person's justifiable reliance in maintaining his conditional

---

[10] All of the Florida cases concerning the procedures for revocation of a
commutation of sentence pre-date Morrissey.

[11] Waiver is an affirmative defense and this defense has not been raised by any
Respondent.  Analysis of the problem of waiver is provided in this report and
recommendation in the interest of addressing all potential issues, given the age of this
case and the paucity of argument by Respondents as to the federal issues.

freedom so long as he abides by the conditions of his release, than to his mere

anticipation or hope of freedom." Morrissey, 408 U.S. at 482, n. 8, 92 S.Ct. 2601, n. 8.

See also Ellard v. Alabama Board of Pardons and Paroles, 824 F.2d 937, 941-944 (11th

Cir. 1987), cert. denied, 485 U.S. 981 (1988) (while there was no protected liberty

interest in being granted parole, there was a liberty interest once the discretion had

been exercised to grant parole) (collecting cases).

 "The essence of parole is release from prison, before the completion of sentence,

on the condition that the prisoner abide by certain rules during the balance of the

sentence." Morrissey, 408 U.S. at 477, 92 S.Ct. at 2598; Young v. Harper, 520 U.S.

143, 147, 117 S.Ct. 1148, 1151, 137 L.Ed.2d 270 (1997) (quoting Morrissey). "Implicit

in the system's concern with parole violations is the notion that the parolee is entitled to

retain his liberty as long as he substantially abides by the conditions of his parole."

Morrissey, 408 U.S. at 479, 92 S.Ct. at 2599. "The parolee has relied on at least an

implicit promise that parole will be revoked only if he fails to live up to the parole

conditions." Morrissey, 408 U.S. at 482, 92 S.Ct. at 2601. "[T]he liberty of a parolee,

although indeterminate, includes many of the core values of unqualified liberty and its

termination inflicts a 'grievous loss' on the parolee and often on others." Id.

 In Young, the Court found that the Oklahoma Preparole Conditional Supervision

Program, used to alleviate prison overcrowding, was sufficiently like parole in Morrissey

to warrant the procedural protections identified in Morrissey. Participants were released

to the program, with constraints similar to parole, but actual parole could be granted

only by the Governor. 520 U.S. at 145, 117 S.Ct. at 1150-51. The petitioner there

"spent five apparently uneventful months outside the penitentiary," but the governor

denied parole and he was required to report back to prison.  *Id.*, at 146, 117 S.Ct. at 1151.  The prisoner had notice that he might be denied parole at the governor's discretion.  *Id.* (citing the findings of the lower courts).  Like the parolee in Morrissey, the Court found that the prisoner had been conditionally released before the expiration of his sentence, he kept his own residence, had a job, and "lived a life generally free of the incidents of imprisonment."  *Id.*, at 148, 117 S.Ct. at 1152.  The Court rejected arguments – presenting both "phantom" and actual differences between preparole and Morrissey parole – which would distinguish the case from Morrissey.  *Id.*, at 149-152, 117 S.Ct. at 1152-54.  *See also* Holcomb v. Lykens, 337 F.3d 217, 221-225 (2d Cir. 2003) (comparing revocation of extended furlough granted to Vermont prisoner with parole revocation in Morrissey, finding that even if there was a protected liberty interest, plaintiff was entitled to no more process than outlined in Morrissey) (citing Morrissey and Young, other citations omitted).

The Ninth Circuit has found that, "[i]f termination of parole inflicts a grievous loss, so too does revocation of a commutation of sentence."  Kelch v. Director, Nevada Dept. of Prisons, 10 F.3d 684, 687 (9th Cir. 1993) (analogizing Morrissey).  The court found that the inmate "had a legitimate expectation of commutation of his sentence–not merely a unilateral hope."  *Id.*, at 688.  The court found the Eleventh Circuit's opinion in Ellard persuasive, and concluded that the inmate "obtained a liberty interest when the Board issued the order commuting his sentence."  *Id.*  This state created interest "should not be overridden lightly," and was protected by due process.  *Id.*[12]

---

[12] Kelch is persuasive here for its comparison with other cases and finding of a liberty interest.  The court further found that this state created liberty interest entitled the

These cases compel the conclusion that Petitioner had a liberty interest that could not be deprived without minimal due process.  His loss of liberty is functionally no different than loss of freedom when parole is revoked.

For a final revocation of probation or parole, minimal due process requires written notice of the alleged violations, disclosure of evidence, an opportunity to be heard and present evidence, cross examination of witnesses (unless there is good cause to deny it), a neutral hearing body, and a written statement of the evidence and reasons for supporting revocation.  Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62, 36 L.Ed.2d 656 (1973) (probation revocation); *following* Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604 (final parole revocation hearing).[13]  Petitioner here was entitled to the same minimal due process before some neutral hearing body.

---

prisoner to *substantive* due process.  *Id.*, at 687-688.  This part of the analysis is flawed, at least under the law of this circuit.  *See* Greenbriar Village, L.L.C. v. City of Mountain Brook, 345 F.3d 1258, 1262-63 and n. 3 (11th Cir. 2003) (rights protected by substantive component of due process are rights created by the Constitution, whereas state created liberty interests are protected by the procedural component of due process) (discussing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1110 (1995) (other citations omitted).  "[N]on-legislative deprivations of state created rights . . . cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally.  Constitutional due process is satisfied for these deprivations when proper procedures are employed."  345 F.3d at 1263 (footnote omitted); 20 F.3d at 1559.

[13] There is also a right (under Morrissey and Gagnon) to a preliminary hearing to determine probable cause for parole or probation revocation, not asserted or implicated here.  There is no requirement that a preliminary as well as a final revocation hearing be held when violator is incarcerated for another conviction, since the revocation did not result in the loss of freedom.  Moody v. Daggett, 429. U.S. 78, 97 S.Ct 274, 50 L.Ed.2d 236 (1976).

In the case at bar, the MOU provided that the sentence would "remain in abeyance for the Board to re-impose *at its discretion* should the alien breach any of the express conditions of the Board's executive order."  App. p. 20 (¶ 2(a)) (emphasis added).  It is apparent that while the conditional commutation could be revoked, there was also discretion not to revoke it.  *See* Advisory Opinion to the Governor, 23 So. 2d 619, 620-621 (Fla. 1945) (death sentence was commuted to life, with the understanding that commutation "stands revoked" on escape or attempted escape; on a finding of escape it was within the power and discretion of the board to restore the original death sentence *or* leave the commutation of sentence in effect).

That the Board has discretion whether to revoke a previously granted commutation of sentence does not render a due process hearing moot or meaningless.  In Morrissey, the Court rejected "the argument that revocation is so totally a discretionary matter that some form of hearing would be administratively intolerable.  A simple factual hearing will not interfere with the exercise of discretion."  408 U.S. at 483, 92 S.Ct. at 2601.[14]  Morrissey pointed out that there are two steps in revocation:  the factual question of whether there was a violation of a condition, and the more complex question of whether recommitment to prison is appropriate.  408 U.S. at 479-480, 92 S.Ct. at 2599.  "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' "  *Id.*, at 481, 92 S.Ct. at 2600 (citation omitted).  The same is true here.  The Board was required to find whether

_____

[14] The reasoning of the court of appeals, rejected in the Morrissey opinion, was based in part on the fact "that the parolee has no statutory right to remain on parole," because state law provided "that a parolee may be returned to the institution at any time."  408 U.S. at 475, 92 S.Ct. at 2597.

a violation had occurred (a matter that does not appear to be factually complex, given Petitioner's physical presence in New York), and then was required to exercise its discretion under state law to determine whether revocation of the commutation of sentence was warranted. Petitioner was entitled to minimal due process in the making of those determinations.

The final question is whether it can be said on this record that Petitioner waived his due process right to a hearing. There is a difference between impliedly accepting a condition that revocation of the commutation of sentence may be effected without a hearing, an issued determined entirely by state law, and a waiver of a federal due process right to a hearing. *See* Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1974) (*en banc*). In that case, the state prisoner had a state-created right to a hearing prior to revocation of parole but had failed to ask for a hearing. He argued that the state was required to inform him of his right to a hearing. The denial of a hearing occurred before Morrissey had been decided, and there was no federal constitutional right to a hearing. The court held:

> Clearly, if the underlying right had been conferred by the United States Constitution, the *Johnson v. Zerbst* standard would apply. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Here, however, no constitutional right was involved, and the holding that a purely state-created right has been waived raises no federally cognizable question.

505 F.2d at 1343.

In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court said:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights. A waiver is

> ordinarily an intentional relinquishment or abandonment of a known right
> or privilege."

304 U.S. 464, 58 S.Ct. 1023 (citations and footnotes omitted). "Presuming waiver from

a silent record is impermissible." Allen v. Thomas, 161 F.3d 667 (11th Cir. 1998),

quoting Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

Thus, "a waiver of constitutional rights is not lightly to be implied." United States

v. Goodwin, 470 F.2d 893, 902 (5th Cir. 1972), cert. denied, 411 U.S. 969 (1973).

Waiver of a constitutional right will only be found if the record discloses its 'intentional

relinquishment or abandonment.' " Hunter v. Moore, 304 F.3d 1066, 1071 (11th Cir.

2002), quoting Johnson v. Zerbst, 304 U.S. at 464.  "[A] waiver will not be implied where

there is no meaningful opportunity to object . . . ."  304 F.3d at 1071-1072, quoting

United States v. Martinez, 974 F.2d 589, 592 (5th Cir.1992).  While a waiver of a

constitutional right may be implied from conduct, the court  must "indulge every

reasonable presumption against waiver," and waiver should not be found in a doubtful

situation.  McDonald v. Steward, 132 F.3d 225, 229 (5th Cir. 1998) (right to a jury trial,

citations omitted).

These principles have been applied repeatedly to waivers of due process rights

upon revocation of federal probation or supervised release.  Federal Rule of Criminal

Procedure 32.1 codifies the due process mandated by Morrissey.   United States v.

LeBlanc, 175 F.3d 511, 515 (7th Cir. 1999).  Waiver of those procedural rights must be

knowing and voluntary.  Id., following United States v. Pelensky, 129 F.3d 63, 68 n. 9

(2d Cir.1997) (a defendant's waiver of Rule 32.1 rights must actually be knowing and

voluntary) and United States v. Stocks, 104 F.3d 308, 312 (9th Cir.1997), cert. denied,

522 U.S. 904 (1997) (a waiver of Rule 32.1 rights must be knowing, intelligent and voluntary).  *See also*, United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003) (same, finding that "the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made").

The record before this court shows that Petitioner refused to sign the commutation of sentence, thereby generally showing his refusal to accept the commutation.  Under state law, he had no right to refuse the commutation and the conditions, and thus all of the conditions took effect and are valid under state law.

But there is no evidence that anyone explained to Petitioner that he had a federal right to a due process hearing before the commutation of sentence was revoked.  It is doubtful that anyone did since the imposition of the condition that there would be no hearing upon violation was valid under state law and the case at bar appears to be a case of first impression.  Further, there is no evidence that Petitioner otherwise knew that he had a right to a hearing or that he voluntarily relinquished that right.  A waiver of a due process right to a hearing cannot be presumed from a silent record, especially when the record shows an attempt by Petitioner to reject the commutation of sentence in its entirety.[15]

The remedy is to order that Respondent Governor Bush, as Chairman of the Florida Board of Executive Clemency, afford a hearing to Petitioner.  The authority that took action to revoke the commutation of sentence was the Florida Board of Executive

---

[15] *Compare* Gaskins v. Crosby, 371 F.3d 820 (11th Cir. 2004) (finding that a Florida prisoner had bargained away his release credits and *ex post facto* claim by knowingly and voluntarily agreeing to participate in the control release program).

Clemency.  That Board may have a method under state law to delegate the hearing function to a suitable neutral agent.  Indeed, the Parole Commission provides staff for executive clemency functions.  See footnote 7, *supra*.  This court need not specify the procedure to be used, trusting that Respondents have several choices under state law that would satisfy federal due process.

Finally, the motion to dismiss the Florida Parole Commission as a Respondent should be denied.  The Commission did not raise this argument in state court, and belatedly raised it here.  While the Clemency Board is probably the most suitable Respondent for a case like this, the records are held by the Department of Corrections and the Commission provides staff to the Clemency Board.

**Recommendation**

It is therefore respectfully **RECOMMENDED** that:

1.  The 28 U.S.C. § 2254 petition, challenging the revocation of conditional commutation (doc. 4), be **GRANTED IN PART** as to the claim of a federal right to a pre-revocation hearing, and that the court **ORDER** that Petitioner be afforded a hearing upon the revocation of the commutation of sentence within 60 days of entry of such order on the docket.

2.  The petitioner (doc. 4), be **DENIED** as to the due process claim that Petitioner is not bound by the conditions of the commutation of his sentence (except for the waiver of a hearing).

3.  The motion to dismiss as to Respondent Florida Parole Commission (doc. 16) also be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2005.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**