IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WAYNE LOBBAN,

        Petitioner,

v.                                                                                               4:03cv325-WS

GOVERNOR JEB BUSH, et al.,

        Respondents.

_____

ORDER DENYING PETITIONER'S PETITION
FOR WRIT OF HABEAS CORPUS

        Before the court is the magistrate judge's report and recommendation docketed February 23, 2005.  See Doc. 29.  The magistrate judge recommends that the petitioner's petition for writ of habeas corpus be granted in part.  The petitioner and the respondents have filed objections (docs. 33, 34, 36, 38) to the magistrate judge's report.

        Having carefully considered the record in light of the objections filed by the parties, this court has determined that--contrary to the magistrate judge's recommendation--the petitioner's petition for writ of habeas corpus must be denied in full.

        In 1989, a circuit court in Dade County, Florida, sentenced Wayne Lobban ("Lobban"), a deportable criminal alien, to fifteen (15) years in prison for trafficking in

cocaine. On September 7, 1994, Lobban was released early from the custody of the Florida Department of Corrections ("DOC") by conditional commutation of sentence granted by the late Governor Lawton Chiles. By the express terms of Executive Order Number 94C-106, the conditional commutation was to take effect upon Lobban's deportation from the United States. The Executive Order also provided that:

> Wayne Donovan Lobban shall not return to or attempt to
> re-enter the State of Florida until such time as he receives
> express written approval, upon written application, from the
> Board; however, such period shall be no less than the
> applicable period specified by Title 8 of the United States
> Code, as amended.
> ....
>
> If Wayne Donovan Lobban fails to comply with conditions
> of this order, this conditional commutation of sentence may
> be revoked by the Board without further hearing.

The commutation incorporated a memorandum of understanding ("MOU") between the Florida Board of Executive Clemency ("Board") and the United States Department of Immigration and Naturalization Services ("INS"). The MOU provided that Lobban's commutation of sentence constituted a suspension, and not a rescission, of any remaining criminal sentence and related period of incarceration. The MOU further provided that a sentence so suspended "will be tolled and remain in abeyance for the Board to re-impose at its discretion should the alien breach any of the express conditions of the Board's executive order."

The MOU also contained the following provisions:

> i. Subsequent to removal, the alien must remain outside of
> the United States, and must agree to refrain from making
> any attempt to re-enter the United States, for the period

> specified by Title 8 of the United States Code, as amended...unless such alien receives a specific waiver of such condition by the Attorney General of the United States or designee thereof.
>
> ....
>
> k.  Failure to comply with this or any other express provision of the Board's executive order will constitute a material breach of the conditions of clemency, and will subject an offending alien to revocation of clemency and re-imposition of the original criminal sentences(s) and any related periods of incarceration within DOC....

At the time of his deportation, Lobban refused to sign the Acknowledgment of Agreement form that was presented to him.  He did not otherwise raise any challenge to his conditional clemency or to his deporation.

On March 6, 2001, Lobban was arrested in New York on charges of forgery, criminal possession of a forged instrument, and resisting arrest.  When notified by INS that Lobban had re-entered the United States, the Governor of Florida issued Executive Order Number 20002C-50, which provided for the revocation of Lobban's conditional commutation of sentence and the return of Lobban to DOC to serve the remainder of his sentence.

After he was returned to DOC's custody on May 14, 2002, Lobban first filed an institutional grievance, then a state habeas petition.  He claimed that he did not accept the terms of the conditional commutation, that he was not given a hearing upon the revocation of his sentence commutation, and that his due process rights were thereby violated.  The DOC denied his grievance, explaining that the matter was not within the control of the DOC and that he should present his claim to the courts.  The state court

denied his petition for habeas corpus, finding that Dobban failed to demonstrate an entitlement to relief.  His motion for rehearing was denied, and his petition for writ of certiorari to the First District Court of Appeal was denied per curiam.

On Lobban's petition for writ of habeas corpus before this court, the magistrate judge first determined that review of Lobban's petition is not limited by 28 U.S.C. § 2254(d)(1), (2).  This court does not agree with such determination.  Although the state court record is modest, it is sufficient not only to trigger the deferential standard of review accorded to state habeas judgments under section 2254(d) but also to require this court's denial of Lobban's claims.

The magistrate judge next determined (1) that Lobban's consent to the commutation of his sentence, or to any of the conditions of that commutation, was not required; (2) that his refusal to sign the Acknowledgment of Agreement form was, therefore, immaterial; and (3) that he was thus subject to revocation of his conditional commutation upon his failure to comply with the specified conditions of that commutation.  This court concurs with the magistrate judge's determination in this regard.

Finally, the magistrate judge determined that Lobban was entitled to a hearing before commutation of his sentence was revoked.  This court does not concur with this determination.  The executive order commuting Lobban's sentence provided that the commutation of sentence could be revoked "without further hearing" if Lobban violated the conditions of the commutation.  Under Florida's Rules of Executive Clemency, the Governor, with the approval of at least two members of the Clemency Board, has the

"unfettered discretion to grant, at any time, for any reason...a Commutation of Sentence...subject to various conditions." R. Exec. Clemency 4. If the conditions of commutation are violated or breached, the Rules of Executive Clemency provide that the commutation "may be revoked by the Clemency Board, returning the applicant to his or her status prior to receiving the conditional clemency." Id. There is nothing in the Rules of Executive Clemency (or elsewhere in Florida law) to suggest that Lobban--whose sentence "remain[ed] in abeyance for the Board to re-impose *at its discretion*" should Lobban return to this country--had a protectible interest in remaining at liberty after he unlawfully returned to the United States. Because the Governor's executive order explicitly provided that Lobban's commutation of sentence could be revoked "without further hearing," and because Lobban has not demonstrated that he had a protectible interest in remaining at liberty in this country given the Governor's order, this court concludes that Lobban had no due process right to a revocation hearing.

Accordingly, it is ORDERED:

1. The petitioner's petition for writ of habeas corpus (doc. 1) is hereby DENIED.

2. The clerk shall enter judgment accordingly.

DONE AND ORDERED this June 17, 2005.

/s William Stafford
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE

Case No. 4:03cv325-WS